UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BEN LEE,

    Plaintiff,

v.

KEN OWENS,

    Defendants.

No. 2:16-cv-0123 JAM AC P

FINDINGS & RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Defendant's motion for summary judgment, ECF No. 19, is now before the court. Plaintiff has filed a response (ECF Nos. 23-25) and defendant has replied (ECF No. 28).

I.    Procedural History

The court screened the first amended complaint and found that plaintiff stated cognizable claims under the Eighth Amendment and state tort law. ECF No. 12. Defendant Owens answered the complaint (ECF No. 17), filed the instant motion for summary judgment following the close of discovery.

II.    Plaintiff's Allegations

Plaintiff alleges that, on March 26, 2015, Owens violated his rights under the Eighth Amendment when he failed to take action after accidently giving him the wrong medication. ECF No. 11 at 3-4. Plaintiff also raises state tort claims for negligently administering the wrong

1

medication and failing to provide treatment. Id. at 6.

According to plaintiff, defendant accidentally administered the wrong medication to him and realized his mishap when he moved onto the next cell and noticed he was still in possession of plaintiff's medication. Id. at 4. After learning of his mistake, defendant offered plaintiff his correct medication, but made no attempt to determine what he had accidentally given to plaintiff or treat him for ingesting the incorrect medication. Id. Defendant's failure to treat led to plaintiff feeling light headed, nauseous, and dizzy, as well as experiencing stomach pains, cold-sweats, and uncontrollable vomiting. Id. Plaintiff told an inmate porter to tell officers that he was "man-down" and the officers took plaintiff to the hospital where he received treatment. Id.

III. Motion for Summary Judgment

A. Defendant's Arguments

Defendant argues that he was not deliberately indifferent to plaintiff's medical needs because he was unaware that plaintiff suffered from a serious medical need and plaintiff cannot establish that his medical condition was serious or painful. ECF No. 19 at 17-20. He also argues that he was not negligent in administering medication to plaintiff because plaintiff received his correct medication and plaintiff cannot establish otherwise. Id. at 12-15.

B. Plaintiff's Response

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict
////

2

literalness" with respect to the requirements of the summary judgment rule. Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted). Accordingly, although plaintiff has largely complied with the rules of procedure, the court will consider the record before it in its entirety. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

In his opposition, plaintiff reiterates that defendant negligently gave him the wrong medication and then failed to treat him, and that he suffered harm due to defendant's deliberate indifference. ECF No. 23.

IV.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" Id. Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the

opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On May 21, 2018, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 20; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.  Undisputed Material Facts

The following facts are undisputed unless specified otherwise.

At all times relevant to the complaint, plaintiff was an inmate at California State Prison (CSP)-Sacramento and defendant was employed there as a licensed vocational nurse.[1] Defendant's Undisputed Statement of Facts (DSUF) (ECF No. 21) ¶¶ 1, 9-10; Response to DSUF (ECF No. 24) ¶ 1, 9-10.

On March 26, 2015, defendant was conducting a "med pass," which is a task assigned to nursing staff to distribute prescribed medication to inmates. DSUF ¶ 11; Response to DSUF ¶ 11. At the time, plaintiff was prescribed mirtazapine, while his neighboring inmate was prescribed methadone. DSUF ¶¶ 3, 25; Response to DSUF ¶¶ 3, 25. During med pass, defendant gave plaintiff a pill. DSUF ¶ 21; Response to DSUF ¶ 21. At this point, the parties' facts briefly diverge.

Defendant avers that after he gave plaintiff his medication, he momentarily believed that plaintiff had been given the wrong medication when he realized that he did not have plaintiff's

---

[1] Defendant's statement of facts states that he was working on C yard on March 26, 2016. DSUF ¶ 10. This appears to be a typographical error, and plaintiff has stated that, assuming defendant meant 2015, DSUF ¶ 10 is undisputed. Response to DSUF ¶ 10.

5

neighbor's medication. DSUF ¶¶ 17-18. However, after speaking with plaintiff and reviewing his own conduct, defendant realized that he had failed to fill the neighboring inmate's prescription and had given plaintiff his correct medication. DSUF ¶¶ 19-20. Defendant then told plaintiff's neighbor that he would return with his medication after he completed the second-tier med pass. DSUF ¶ 23. After completing the second tier, defendant did not have any extra medication envelopes and returned to the nursing station, filled the neighboring inmate's prescription for methadone, and administered the methadone to plaintiff's neighbor. DSUF ¶¶ 24, 26-27.

Plaintiff asserts that after defendant gave him medication, defendant moved onto the next cell and called plaintiff to get his medication. Plaintiff's Statement of Facts (PSUF) (ECF No. 25) ¶ 21. In response, plaintiff told defendant that he was "right here," and then asked defendant what medication he was given if defendant still had his medication. PSUF ¶¶ 22, 24.[2] Instead of responding, defendant continued to complete the second-tier med pass. PSUF ¶ 25. Defendant then returned and offered plaintiff his prescribed mirtazapine, saying that he gave plaintiff his neighbor's medication by mistake and had plaintiff's if he wanted to take it. PSUF ¶ 27. Plaintiff refused the medication and began raising concerns regarding the ingestion of the incorrect prescription. PSUF ¶¶ 28, 29. In response, defendant stated "Man, you're acting like a baby, you'll be fine." PSUF ¶ 30. He then walked away without taking any action to assess or address the potential harm caused by taking the wrong medication. PSUF ¶¶ 34-37.[3]

---

[2] Defendant objects to PSUF ¶¶ 22, 24, and 29 on the grounds that they are irrelevant, contain hearsay, and because plaintiff can be impeached by evidence of a criminal record. ECF No. 29 at 7. These objections are overruled. Plaintiff's statements are relevant to establishing defendant's awareness that plaintiff was potentially given the wrong medication, and in that context, the statements are relevant as evidence of what plaintiff said, not that what he said was true. As to the objection on the ground of impeachment by criminal record, this objection is not proper because it deals with plaintiff's credibility, which is not before the court at the summary-judgment stage.

[3] Defendant objects to PSUF ¶ 37 on the grounds that it is irrelevant, lacks foundation, calls for an expert opinion, and because plaintiff can be impeached by evidence of a criminal record. ECF No. 29 at 8. These objections are overruled to the extent PSUF ¶ 37 sets out plaintiff's observations of defendant's conduct. Plaintiff is competent to testify as to what he saw defendant do or not do, and defendant's conduct is relevant to whether he was deliberately indifferent. The objection on the ground of impeachment by criminal record is improper for the reasons already addressed.
(continued)

6

The parties are once again largely in agreement as to what occurred after defendant left the area. Approximately fifteen to thirty minutes after defendant gave plaintiff medication, plaintiff became ill.[4] DSUF ¶ 32; Response to DSUF ¶ 32. Defendant never observed plaintiff displaying objective signs of ill effects due to ingesting methadone or any other medication, and plaintiff did not tell defendant that he was ill due to ingesting methadone or any other medication. DSUF ¶¶ 30-31; Response to DSUF ¶ 30-31.

After plaintiff became sick, he called an inmate porter, who contacted correctional officers to transport plaintiff to the Treatment and Triage Area (TTA) for medical care. DSUF ¶¶ 33-35; Response to DSUF ¶¶ 33-35. The officers responded immediately and escorted plaintiff to the TTA. DSUF ¶¶ 34-35; Response to DSUF ¶¶ 34-35. Plaintiff was able to walk to the TTA under his own power, and once there, a doctor and nurses provided him medical treatment, including a "GI cocktail." DSUF ¶¶ 35, 37-38; Response to DSUF ¶¶ 35, 37-38.[5] Medical staff observed plaintiff for fifteen to thirty minutes before releasing him back to his cell, which he was able to walk back to without assistance. DSUF ¶¶ 39-40; Response to DSUF ¶¶ 39-40. No drug tests were administered to show that plaintiff had taken methadone or any other medication. DSUF ¶ 41; Response to DSUF ¶ 41.

VI. Discussion

    A. Legal Standards Governing Deliberate Indifference Claims

In order to state a §1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v.

---

[4] Although defendant states that plaintiff "allegedly" became ill, he does not dispute this allegation, and plaintiff's claim that he became sick fifteen to thirty minutes after taking the medication is therefore undisputed for purposes of the summary-judgment motion.

[5] Plaintiff disputes the portion of DSUF ¶ 38 that address the purpose of the "GI cocktail" and what it indicates about his condition. However, the parties are not in dispute as to the fact that plaintiff was given a "GI cocktail."

7

| | |
|---|---|
| 1 | McMillian, 503 U.S. 1, 5 (1992) (citation omitted). |

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds by WMX Techs. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989)).

"While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." Wood, 900 F.2d at 1334. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Farmer, 511 U.S. 825, 837 & n.5 (1994). It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Id. (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

      i.    Serious Medical Need

As an initial matter, if plaintiff was not given his neighbor's methadone, as defendant contends, then he did not suffer from a serious medical need. However, though defendant argues that plaintiff cannot show he was given the wrong medication (ECF No. 19 at 12-16), this fact is

////

////

8

sufficiently disputed.[6] Accordingly, for purposes of summary judgment, the court must assume that defendant gave plaintiff his neighbor's methadone, and the question becomes whether plaintiff's ingestion of that medication created a serious medical need.

Defendant argues that plaintiff cannot show that he suffered from a serious medical need because he has not shown that his injuries were the result of being given the wrong medication, he has provided only subjective evidence that he was in pain, and when he went to the TTA he was given an unknown liquid to drink and released after brief observation. ECF No. 19 at 20. Plaintiff asserts that defendant is attempting to trivialize his injuries and that after he returned to his cell he was in pain for the rest of the night and he now fears taking medication because he is worried about being given the wrong medication and not being treated. ECF No. 23 at 20-21.

Although defendant states that he has reviewed plaintiff's medical records regarding the treatment plaintiff received after being given the wrong medication, it is undisputed that he was not present for the treatment and he has not provided copies of the records he relied upon. ECF No. 19-3 at 4, ¶ 12. Furthermore, his statements regarding the purpose and meaning of the "GI cocktail" plaintiff was given are speculative in nature and therefore are without evidentiary value. Id. However, in opposition to the motion, plaintiff submits medical records from the day of the incident and the following day. ECF No. 23 at 36-38. Defendant objects to the records as lacking foundation, being unauthenticated, and hearsay (ECF No. 29 at 13), but does not challenge the authenticity of the records, and plaintiff would likely be capable of authenticating them at trial. Assuming authentication, the documents would not lack foundation and are not hearsay and the

---

[6] Plaintiff's claims that defendant told him he had been given the wrong medication and then offered him his correct medication (PSUF ¶¶ 26-27) are sufficient to dispute defendant assertions that plaintiff was given the correct medication. Although defendant argues that any statement that he gave plaintiff the wrong medication can be explained by his momentary belief that he had given plaintiff the wrong medication (ECF No. 28 at 1-2), he would have had no need to provide plaintiff with additional medication if plaintiff had been given his correct medication in the first instance. Additionally, defendant's statements regarding the monitoring and regulation of methadone, as well as his lack of notification that there had been missing or extra doses, are unsupported by any specific details that would objectively demonstrate plaintiff was not given the wrong medication. DSUF ¶¶ 28-29; ECF No. 19-3 at 4, ¶ 11. Defendant's statements regarding the fact that plaintiff admitted the pill he took looked like mirtazapine are also meaningless without evidence that methadone does not also come in a similar-looking pill. DSUF ¶¶ 4, 21-22.

9

objections are overruled. Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (citations omitted) ("At the summary judgment stage, [the court does] not focus on the admissibility of the evidence's form. [It] instead focus[es] on the admissibility of its contents.").

The medical records show that plaintiff was taken to the TTA, where it was noted that he supposedly was accidentally given another inmate's 10 mg methadone dose. ECF No. 23 at 36. Plaintiff was noted to be stable, but very anxious and worried. Id. The notes further state that "[p]oison unit also called, and asked for side effect of methadone, and what they recommended if he is above the recommended dosage, treat as overdose and monitor the inmate." Id. The doctor ordered that plaintiff should be reassured, given a "G.I. cocktail," and sent back to his cell once stable. Id. Plaintiff's records were checked and showed no allergies to any medications, including methadone. Id. The following day, plaintiff was seen by another doctor who noted as follows:

> Nausea and vomiting after taking wrong medication. This may be the side effect of methadone, but with that dose it is not supposed to cause any respiratory distress. I feel that the patient's symptoms are mostly caused by his anxiety. The patient is assured. I told the patient that even though he took the wrong medication, that medication is quite benign with that dose. Apparently, the patient is still worried about heart condition and lung condition and for that reason, I asked the nurse to do an EKG on him. The EKG showed normal sinus rhythm. He had bradycardia at 48, which he had before, and there was no change of his QRS or T wave and his QT or corrected QT are in normal range at 418 and 373 respectively. I told the patient to notify Medical if his nausea and vomiting continues for another day or 2. I expect him a [sic] full recovery in a day.

Id. at 38.

Based on the records plaintiff has submitted, it does not appear that he can prove his ingestion of methadone constituted or caused a serious medical need. However, even if the court assumes that plaintiff's ingestion of methadone created a serious medical need, defendant should still be granted summary judgment because plaintiff cannot show that defendant deliberately disregarded that need.

        ii.    Defendant's Response to Plaintiff's Medical Need

Assuming that defendant gave plaintiff the wrong medication and was aware of that fact, plaintiff must prove in order to prevail at trial that defendant knew that his error posed a serious

risk of harm to plaintiff and then disregarded that risk. Defendant argues that plaintiff cannot prove that defendant had the requisite state of mind because he did not see and was not told about plaintiff's vomiting, nausea, and pain, and therefore did not know that plaintiff had a serious medical need. ECF No. 19 at 17-20. In response, plaintiff argues that defendant had a duty to abate the risk of harm created by giving him the wrong medication, but instead simply told him that he would be fine and was "acting like a baby." ECF No. 23 at 16-20.

Plaintiff's arguments that defendant had a duty to take action or should have known generally about the risks of medication errors are essentially arguments that defendant was negligent, and negligence does not establish deliberate indifference. Furthermore, there is no evidence that defendant knew plaintiff taking a 10 mg dose of methadone would pose a serious risk to his health. Taking plaintiff's version of facts as true, defendant told plaintiff that he would be fine and that he was "acting like a baby." PSUF ¶ 30. Though certainly not professional, this response indicates a subjective belief that plaintiff was not in any danger from taking his neighbor's medication. Moreover, since defendant knew plaintiff had taken his neighbor's medication, he would have known that plaintiff took 10 mg of methadone, and the physicians' notes provided by plaintiff show that methadone does not pose a significant risk of serious harm at that dose. Additionally, while plaintiff argues that nausea and vomiting are known side effects of methadone (PSUF ¶ 50), even if defendant were aware that the administration of methadone could cause nausea and vomiting at the dose plaintiff received, neither of those conditions, without more, constitutes a serious medical need. Dean v. City of Fresno, 564 F. Supp. 2d 798, 813 (E.D. Cal. 2008) ("Vomiting in and of itself is not a serious medical condition.").

Accordingly, plaintiff cannot show that defendant knew that plaintiff taking his neighbor's methadone constituted a serious risk to plaintiff's health.

### iii. Harm Caused by the Indifference

Even if the court assumes that defendant knew there was a risk to plaintiff's health from taking methadone and he failed to provide plaintiff with treatment, summary judgment is still appropriate because plaintiff cannot show that the delay in treatment caused him additional injury. Shapley v. Nev. Bd. of State Prison Comm'rs., 766 F.2d 404, 407 (9th Cir. 1985) (delay

11

of surgery did not constitute deliberate indifference unless delay was harmful); Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (delaying treatment does not establish deliberate indifference unless plaintiff proves delay led to further injury); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (delay in treatment does not constitute Eighth Amendment violation unless it causes "substantial harm").

After plaintiff vomited, correctional staff responded immediately and took him to the TTA where he was given a "GI cocktail" and monitored for approximately fifteen to thirty minutes before being released to his cell. DSUF ¶¶ 32-35, 38-39; Response to DSUF ¶¶ 32-35, 38-39. Plaintiff further asserts that after returning to his cell, he went to bed and his cellmate observed him "moan[ing] as if he was in pain throughout the night." PSUF ¶¶ 54, 56. The facts show that plaintiff was taken to the TTA and he received treatment immediately after becoming sick, and that even after receiving treatment he continued to feel sick and experience stomach pain. The fact that nausea and pain continued for some time after treatment compels the inference that earlier intervention would not have made a significant difference. Plaintiff has presented no evidence to support a finding that any cognizable harm was caused by the delay itself. Accordingly, plaintiff cannot show that defendant's failure to act caused him harm.

B.  Professional Negligence

Subject to the conditions set forth in 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over state law claims. Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc). The court's decision whether to exercise supplemental jurisdiction should be informed by "values of economy, convenience, fairness, and comity." Id. at 1001 (citations and internal quotation marks omitted). Further, primary responsibility for developing and applying state law rests with the state courts. Therefore, when federal claims are eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n.7 (1988) (citation omitted); Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994) ("'[I]n the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.'" (emphasis and alteration

in original) (quoting <u>Schneider v. TRW, Inc.</u>, 938 F.2d 986, 993 (9th Cir. 1991))). As outlined above, it is recommended that defendants' motion for summary judgment be granted as to the federal-law claim. Plaintiff has not identified any reason why his case is not a usual case and the undersigned therefore recommends that the court decline to exercise supplemental jurisdiction over plaintiff's state law claims.

VII. <u>Plain Language Summary of this Order for a Pro Se Litigant</u>

It is being recommended that defendant's motion for summary judgment be granted because you did not show that defendant knew there was a serious risk to your health from you taking methadone, or that the delay in treatment caused you more injury. Because it is being recommended that your Eighth Amendment claim be dismissed, the undersigned is also recommending that the court decline to hear your state law negligence claim.

VIII. <u>Conclusion</u>

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motions for summary judgment (ECF No. 19) be GRANTED and the claims against defendant Owens be dismissed.

2. Judgement be entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 28, 2019

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE